United States District Court
Southern District of Texas

UNITED STATES DISTRICT COURT   SOUTHERN DISTRICT OF TEXAS

ENTERED
May 21, 2020
David J. Bradley, Clerk

| | | |
|---|---|---|
| Juan Jose Reynoso, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| *versus* | § | Civil Action H-09-2103 |
| | § | |
| Lorie Davis, | § | |
| | § | |
| Respondent. | § | |

# Opinion on Summary Judgment

## 1.     Introduction.

Juan Jose Reynoso killed a homeless woman during a robbery because she would not give him any money.  He confessed to the crime. A jury convicted him of capital murder.  In a separate punishment phase, the prosecution presented evidence of Reynoso's extensive lawlessness. He was sentenced to death.  After unsuccessfully seeking state remedies, Reynoso now sues for federal habeas corpus relief.

Reynoso's federal habeas petition raises four claims.   The state appellate court competently dismissed three of Reynoso's federal claims. Reynoso's fourth claim complains about his trial attorneys' representation. Because Reynoso never gave the state courts a fair opportunity to consider that argument, federal review is barred.  Alternatively, the court finds that Reynoso's trial attorneys made an adequate attempt to defend against a death sentence.  Any new evidence is either cumulative of the trial evidence or unpersuasive in comparison to aggravating evidence. The court will deny habeas relief.

2.    *Habeas Corpus Review.*

The state of Texas has the power to kill a person as punishment. The writ of habeas corpus allows him to challenge his custody on the grounds that his conviction and sentence violate federal law. A federal court's narrow, yet careful, review exists only to ensure that the state afforded full constitutional protection to a man it has sentenced to die.

The respondent has moved for summary judgment. The Anti-Terrorism and Effective Death Penalty Act overrides ordinary summary judgment rules.[1]   Under AEDPA, if a state court has adjudicated an inmate's legal claims, he must show that its decision conflicts with, or unreasonably applies, clearly established federal law.[2]

3.    *Routinely Denied Claims.*

Reynoso's first three claims relate to Texas's method of assessing a death sentence. Reynoso says that (1) the prosecution should have to prove the absence of mitigating evidence beyond a reasonable doubt; (2) a state appellate court should reweigh the jury's decision regarding mitigating evidence; and (3) Texas's statutorily required jury instructions are vague. The Texas Court of Criminal Appeals denied all three claims on direct appeal.[3] Other federal petitioners have repeatedly raised similar attacks to Texas's capital sentencing scheme. Courts have consistently denied each of those claims.[4]   Reynoso concedes that controlling authority has rejected his arguments.[5]   The state court's denial of

---

[1]  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (overruled on other grounds by *Tennard v. Dretke*, 542 U.S. 274 (2004)).

[2] 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).

[3] *Reynoso v. State*, 2005 WL 3418293, at *4-5 (Tex. Crim. App. 2005) (unpublished).

[4] *Blue v. Thaler*, 665 F.3d 647, 668-69 (5th Cir. 2011); *Druery v. Thaler*, 647 F.3d 535, 546-47 (5th Cir. 2011); *Rowell v. Dretke*, 398 F.3d 370, 378 (5th Cir. 2005); *Scheanette v. Quarterman*, 482 F.3d 815, 828 (5th Cir. 2007); *Woods v. Cockrell*, 307 F.3d 353, 358-59 (5th Cir. 2002).

[5] Dkt. 36 at 3, n.4.

Reynoso's first three claims was not contrary to, or an unreasonable application of, federal law.

4.    *Failure to Present Mitigating Evidence.*

Ronald N. Hayes and Robert Scott represented Reynoso at trial. In his fourth claim Reynoso says that his trial attorneys ineptly defended him against a death sentence.   Reynoso's trial attorneys faced a difficult challenge in seeking a life sentence.  The state called numerous witnesses to describe Reynoso's long history of lawlessness and violence.   To counter that evidence, the defense called 12 witnesses, including close family members, to describe Reynoso's background.   Reynoso himself also testified.  The defense said that Reynoso had been a well-behaved child until age 13 when his mother abandoned the family.  His father was not attentive and abused his children.  Reynoso's behavior deteriorated. He threw himself into gang life.  He used drugs, suffered anxiety, and attempted suicide.  Still, Reynoso eventually became a loving father.

Reynoso now says that his trial attorneys did not do enough. Reynoso relies on affidavits alleging that his trial attorneys should have presented evidence that he: (1) grew up in poverty; (2) experienced violence in his neighborhood and in his home, both from watching his parents fight and from his older brother's hitting; (3) only found refuge in a mother who later abandoned her family; (4) had a father who was not attentive; (5) found security in gang life; (6) witnessed extreme gang violence and later became the victim of it himself; (7) abused substances to cope with his troubled life; and (8) had mental illness that, when combined with drug use and the constant need for drug money, led to explosive anger and indifference to others.[6]

Reynoso first raised this claim on federal habeas review.  This court stayed and administratively closed the federal action so that Reynoso could present his *Strickland*[7] claim to the state courts.  Texas's stringent

---

[6] Dkt.57 at 14-15.

[7] *Strickland v. Washington*, 466 U.S. 668 (1984).

abuse-of-the-writ doctrine (codified at TEX. CODE CRIM. PRO. art. 11.071 § 5) only allows inmates to file a successive habeas application under limited circumstances.  The Texas Court of Criminal Appeals dismissed Reynoso's successive application because he did not meet the statutory requirements.[8]

This court reopened its case.  Respondent now says that the state court's dismissal of the *Strickland* claim bars federal review.  How an inmate has litigated his claims determines what issues a federal court can adjudicate.  If an inmate does not follow well-established state procedural rules, and the state court thereby finds that he has defaulted judicial review, a procedural bar forecloses federal review.[9]  Reynoso admits that he defaulted his claim in state court.[10]

The court will decide if Reynoso can overcome the procedural bar before considering the claim in the alternative.

## 5.  *Procedural Bar.*

An inmate can overcome a procedural bar if he "can demonstrate *cause* for the default and *actual prejudice* as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a *fundamental miscarriage of justice.*"[11]  Reynoso excuses his default by relying on *Martinez v. Ryan*,[12] in which the Supreme Court found that deficient performance by a state habeas attorney can be cause.

---

[8] *Ex parte Reynoso*, 2010 WL 2524571 (Tex. Crim. App. June 16, 2010).

[9] *Lambrix v. Singletary*, 520 U.S. 518, 523 (1997); *Coleman v. Thompson,* 501 U.S. 722, 732 (1991); *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001).

[10] Dkt. 44 at 1-3.

[11] *Coleman*, 501 U.S. at 750 (emphasis added); *see also Garza v. Stephens*, 738 F.3d 669, 675-76 (5th Cir. 2013).

[12] 132 S. Ct. 1309 (2012).  *Martinez* applies to cases arising from Texas courts.  *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911 (2013).

A.    *Background.*

On May 12, 2004, the trial court sentenced Reynoso to death.  One week later, the trial court appointed Stephen R. Rosen to represent Reynoso on state habeas review.  Reynoso alleges that Rosen should have made a robust investigation into mitigating evidence.  The Court looks at Rosen's duty during three time periods: (1) when he was first appointed, (2) when Reynoso subsequently represented himself, and (3) when only a short time remained to prepare a habeas application.

The question of whether Reynoso was competent to waive habeas review clouded the first period of Rosen's representation. Less than a week after Rosen's appointment, Reynoso wrote a letter to the trial court saying that he did not wish to proceed with his appeals and that he wanted to be executed.  Over the next few months, Reynoso made several efforts to remove Rosen and to request the setting of an execution date. Reynoso repeatedly told the court in letters and in hearings that he wanted to waive habeas review.  The Texas Court of Criminal Appeals abated Reynoso's action and ordered the trial court to decide whether he waived his rights competently and knowingly.  The trial court appointed two mental-health experts who found Reynoso competent to dismiss his attorney and waive state habeas review.  On November 8, 2004, the trial court withdrew Rosen's appointment.

For the next several months, Reynoso represented himself.  During this second period, Rosen had no legal obligation to investigate potential habeas claims.  Reynoso repeatedly thereafter wrote letters to the trial court asking for an execution date. Under state law, Reynoso had until April 9, 2005, to file a state habeas application.

On March 2, 2005, Reynoso wrote a letter saying he had changed his mind and wanted to proceed with habeas review.  Even though he was no longer counsel of record, Rosen filed a motion asking for an extension of time to file a habeas application. In an April 4, 2005, hearing, the trial court reappointed Rosen and extended deadlines for filing a habeas application.

Reynoso's dithering affected Rosen's duty and ability to file a habeas application in the third time period. On May 1, 2005, Reynoso sent the trial court a letter saying "again, once and for all, I DO NOT want [Rosen] to represent me. I wish to waive my appeals. I would like an execution date immediately."[13] In a May 19, 2005, face-to-face meeting with an associate of Rosen's, Reynoso reiterated that he wanted to waive state review.

On June 22, 2005, however, Reynoso wrote a letter to the trial court again saying that he wished to proceed with habeas review. At that point, state law prevented Rosen from seeking any additional extension of time.[14] Reynoso left counsel only days to investigate and prepare a habeas application.

Rosen filed a state habeas application on July 11, 2005, raising only one issue that had already been presented on direct appeal. The state habeas court denied relief.[15]

B.    *State Habeas Representation as Cause.*

To establish cause, a petitioner must show that some external impediment frustrated his or her ability to comply with the state's procedural rule.[16] Ineffective assistance of counsel can serve as cause to excuse a procedural default. The mere fact that petitioner or his counsel did not recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. "To meet the cause exception under *Martinez*, an inmate must: (1) prove that his habeas attorney's representation fell below the standards

---

[13] *Ex parte Reynoso*, 228 S.W.3d 163, 164 (Tex. Crim. App. 2007).

[14] *See* TEX. CODE CRIM. PRO. 11.071 § 4(b).

[15] *Ex parte Reynoso*, 257 S.W.3d 715 (Tex. Crim. App. 2008). Confusion about the timeliness of the filing caused the Court of Criminal Appeals first to dismiss as untimely, and then later to deny the merits of, Reynoso's habeas application.

[16] *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

established in *Strickland* and (2) show that his underlying ineffective-assistance claim "has some merit[.]"[17]

Finding cause to overcome a procedural bar requires the exercise of equity.[18]  Less than a week after Rosen's first appointment, Reynoso indicated that he wished to die.  He insistently continued his efforts until the courts removed Rosen as counsel of record.  Reynoso alone was responsible for developing habeas claims during the time between Rosen's removal and his reappointment on April 4, 2005.  Rosen had no obligation to investigate habeas claims when he did not represent Reynoso.

Even after that, Reynoso's waffling blurred Rosen's responsibilities[19] On habeas review, a petitioner's "conduct in relation to the matter at hand may disentitle him to the relief he seeks."[20]  Reynoso's belligerent and mercurial actions during habeas review cut against the operation of equity in his favor.  Simply, a defendant cannot "block[] his attorney's efforts to defend him . . . [and then] later claim ineffective assistance of counsel."[21] Reynoso cannot show cause.

As an additional reason for which Reynoso has not shown cause, "[t]he mitigation evidence presented at trial, in terms of both quantity and quality, would not suggest to a reasonable habeas attorney that [Reynoso's] trial counsel rendered ineffective assistance."[22]

---

[17] *Martinez*, ___ U.S. ___, 132 S. Ct. at 1318; *see also Crutsinger v. Stephens*, 540 F. App'x 310, 317 (5th Cir. 2013); *In re Sepulvado*, 707 F.3d 550, 556 n.12 (5th Cir. 2013).

[18] *Martinez*, ___ U.S. at ____, 132 S. Ct. at 1318.

[19] On state habeas review, Rosen filed an affidavit.  He explained:

I was ordered to file a writ on [Reynoso's] behalf.  I did the best I could under the circumstances.  Mr. Reynoso did not want to cooperate and did not want my assistance in pursuing any post-conviction relief in this case.  [Another attorney] and I reviewed the trial record in this cause. Under the circumstances we did everything we could to represent Mr. Reynoso.

[20] *McCleskey v. Zant*, 499 U.S. 467, 490 (1991) (quotation omitted).

[21] *Roberts v. Dretke*, 356 F.3d 632, 638 (5th Cir. 2004); *see also Strickland, 466 U.S. at 691* ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."); *Autry v. McKaskle*, 727 F.2d 358, 361 (5th Cir.1984) ("By no measure can [defendant] block his attorney's efforts and later claim the resulting performance was constitutionally deficient.").

[22] *Matthews v. Davis*, No. 15-70028, 2016 WL 6543501, at *6 (5th Cir. Nov. 3, 2016).

C.    Prejudice.

Alternatively, Reynoso must also show "actual prejudice as a result of the alleged constitutional violations" before federal review becomes available.[23]    When reviewing "whether state habeas counsel was ineffective in failing to present the trial court ineffectiveness claim in the state habeas proceeding," actual prejudice "means that [a petitioner] must show a reasonable probability that he would have been granted state habeas relief had his habeas counsel's performance not been deficient."[24]

Reynoso says actual prejudice exists because Rosen did not develop the evidence contained in his habeas petition: that Reynoso grew up in poor, violence-ridden neighborhoods, had parents who fought constantly, experienced violence at home, was mistreated by an aggressive older brother, and was traumatized by his gang experiences. Also, Reynoso argues that his trial attorneys should have called a mental-health expert to put his evidence into a psychological context.[25]

Much of the habeas evidence came before the jury, though perhaps not in the detail Reynoso now wishes.[26]   Some of Reynoso's new evidence conflicts with his own trial testimony, such as that he came from a "middle

---

[23] *Coleman*, 501 U.S. at 745; *see also Hernandez v. Stephens*, 537 F. App'x 531, 542 (5th Cir. 2013) (requiring an inmate who had shown cause under *Martinez* to show actual prejudice).

[24] *Martinez v. Davis*, 653 F. App'x 308, 318 (5th Cir. 2016); *see also Newbury v. Stephens*, 756 F.3d 850, 872 (5th Cir. 2014).

[25] A psychiatrist, who has not met Reynoso, reviewed his life history and submitted a federal affidavit saying that Reynoso's exposure to violence left him distrustful of others, easily subject to substance abuse, depressed, and possibly suffering from other mental disorders.   Without the veneer of psychological speculation, the jury had before it sufficient information to reach the same conclusions.

[26] For instance, Reynoso testified at trial that his older brother abused him "[p]hysically. He would . . . beat [him] up."  Tr. Vol. 16 at 179.  Reynoso also described receiving beatings from his older cousins. Tr. Vol. 16 at 179.  Witnesses described how Reynoso's alcoholic father was "never a very kind of nurturing type of father[.]"  Tr. Vol. 15 at 129; *see also* Tr. Vol. 15 at 201; Vol. 16 at 44, 79.  Witnesses testified that Reynoso's father physically abused him and an older brother beat him up.  Tr. Vol. 15 at 201; Tr. Vol. 16 at 43, 69, 84.  His behavior changed drastically when his mother abandoned her family, leading to his anxiety, drug abuse, and gang involvement.  Tr. Vol. 13 at 122; Tr. Vol. 15 at 96, 101-102, 204; Vol. 16 at 77, 113-14.  Records from his incarceration as a juvenile showed that he suffered from depression, anxiety, and suicidal ideation Tr. Vol. 16 at 147-49.

class background"[27] and was not "abused on any kind of ongoing basis."[28] Some of Reynoso's new evidence may support greater insight into his background. That said, Reynoso relies on witnesses who have come forward years after trial, yet who can only give testimony about circumstances that Reynoso knew himself. The witnesses Reynoso is insisting his counsel should have "investigated" were all people whom Reynoso knew. Counsel are not normally required to discover witnesses that the defendant has withheld, especially when, as here, they are duplicative. Reynoso's trial attorneys gave the jury insight into the same general subjects as Reynoso presents on federal review.

This is not a case where Reynoso's trial attorneys abdicated their duty to present mitigating evidence. The defense called numerous witnesses. Their testimony followed the same themes, even if lacking in detail, as the information now presented on federal review. Reynoso takes issue with his trial attorneys' choice of questions and depth of examination, but his argument "boils down to a matter of degrees – [he]wanted these witnesses to testify in greater detail about similar events and traits[.]"[29] The new evidence differs little in substance or mitigating thrust from that his trial attorneys put before the jury. Actual prejudice does not exist for evidence that is "in the main cumulative" to that from trial.[30]

Against that evidence, the State showed Reynoso's extremely violent history of offenses. Reynoso committed numerous crimes as a juvenile: unlawfully carrying a weapon, stealing cars, evading arrest. He absconded from parole. As an adult, he was convicted of burglary of a

---

[27] Tr. Vol. 16 at 193.

[28] Tr. Vol. 16 at 193. Reynoso's father would occasionally spank or whip him, though his mother was stricter as a parent. Tr. Vol. 16 at 189-90. Reynoso testified that his father only "absused [him] on one occasion" after his mother left. Tr. Vol. 16 at 178. However, Reynoso also recounted hitting his father and leaving him doubled over on the floor on that occasion. Tr. Vol. 16 at 215.

[29] *Carty v. Thaler*, 583 F.3d 244, 264 (5th Cir. 2009); *see also Neal v. Puckett*, 286 F.3d 230, 247 (5th Cir. 2002) ("[A]lthough the additional mitigating evidence was of a significantly better quality than that actually presented, much of it was similar in nature to the original evidence.").

[30] *Banks v. Dretke*, 540 U.S. 668, 700 (2004).

vehicle, possession of drugs, and contempt of court.  Reynoso sold drugs and threatened to kill other drug dealers.  Reynoso shot a man after stealing his drugs.  In the weeks before the murder and attempted robbery of his homeless victim, Reynoso engaged in other violent robberies.  With accomplices, Reynoso robbed several people, threatening to shoot them.  Reynoso robbed several stores.  He stole cars.  After his arrest for capital murder, Reynoso assaulted another inmate.   The State argued that violence was an unremitting and escalating theme in Reynoso's life.

Even if habeas counsel's representation amounted to cause, Reynoso has not shown that there is a reasonable probability that he would have been granted state habeas relief had the new evidence been presented in the state habeas proceedings.  Adequate and independent state procedural grounds prevent this court from reaching the merits of Reynoso's fourth claim for relief.

## 6.   *Alternative Review of the Merits.*

For the same reasons that Reynoso has not shown actual prejudice, an alternative review of the merits shows that Reynoso is not entitled to federal habeas relief on his *Strickland* claim.

## 7.   *Certificate of Appealability.*

This court may deny a certificate of appealability on its own motion.  A certificate will issue only if the petitioner has made a "substantial showing of the denial of a constitutional right."[31]   Binding precedent forecloses relief on all Reynoso's claims.  No certificate is justified.

---

[31] 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

*8.*     *Conclusion.*

"Though the penalty is great and our responsibility heavy, our duty is clear."[32] The court grants respondent's motion for summary judgment and denies Reynoso's habeas petition.  The court will dismiss his petition.  The court will not certify any issue for review on appeal.

Signed on _____*May  21*_____, 2020, at Houston, Texas.

Lynn N. Hughes
United States District Judge

---

[32] *Rosenberg v. United States*, 346 U.S. 273, 296 (1953) (Clark, J.).