| UNITED STATES DISTRICT COURT | | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|

| Juan Jose Reynoso | § | |
| | § | |
| Plaintiff, | § | |
| *versus* | § | Civil Action H-09-2103 |
| | § | |
| Lori Davis | § | |
| | § | |
| Defendant. | § | |

## MOTION TO ALTER OR AMEND THE JUDGMENT

Petitioner, Juan Reynoso, by counsel, moves the Court, pursuant to Fed. R. Civ. Proc. 59(e), to alter or amend the Opinion on Summary Judgment ("Opinion") and the Final Judgment entered on May 21, 2020. The Court's denial of Mr. Reynoso's claim of ineffective assistance of trial counsel in the investigation of mitigating evidence is grounded in mistakes that appear in the Opinion. The Court has authority to correct errors under Rule 59(e), as follows:

Eleven days after the entry of judgment, the Supreme Court determined that Rule 59(e) "gives a district court the chance 'to rectify its own mistakes in the period immediately following' its decision." *Banister v. Davis*, 139 S. Ct. 2742, 2020 *2 (2020) (quoting *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 450 (1982)). The Rule is available in a federal habeas corpus proceeding. *Banister*, at *5 (citing *Browder v. Director, Dept. Of Corrections if Illinois*, 434 U.S. 257, 267 (1978)). Like Gregory Dean Banister's Rule 59(e) motion, discussed in the Supreme Court's decision that was filed on June 1, 2020, this Motion raises manifest errors of law and fact.

On June 15, 2020, the Supreme Court decided *Andrus v. Texas*, 590 U.S.\_\_\_\_, 2020 WL 3146872, remanding for the Texas Court of Criminal Appeals to decide whether an "abundant

1

amount" of mitigating evidence not presented at Terence Andrus' trial should warrant a new trial on punishment. In a 6-3 decision, the Supreme Court found error with the CCA's failure to determine whether, with better representation, there is a reasonable probability that Andrus' jury would have rendered a life sentence. Notably, the Opinion summarized evidence not presented in mitigation of the death penalty, then comments:

> During Andrus's capital trial, however, nearly none of this mitigating evidence reached the jury. That is because Andrus' defense counsel not only neglected to present it; he failed even to look for it. Indeed, counsel performed virtually no investigation of the relevant evidence. Those failures also fettered the defense's capacity to contextualize or counter the State's evidence of Andrus' alleged incidences of past violence.

Slip Op. p.1.

Like Terence Andrus' attorneys, Mr. Reynoso's attorneys in the state courts -- at trial and in state habeas corpus proceedings -- generally failed even to look for mitigating evidence.

Counsel has great respect for the District Court. Mistakes happen, however, from passage of time, or because words on paper do not clearly communicate what occurred. With all due respect for the Court's hard work and high responsibilities, counsel for Petitioner here develops clear errors, which, when corrected, lead to a different result:

> 1. **The showing of cause for procedural default under *Martinez* rests on Petitioner's showing of ineffective assistance by state habeas counsel**.

The Court held that state habeas counsel's ineffective assistance did not provide "cause" under *Martinez v. Ryan*, 566 U.S. 1 (2012) for Reynoso's procedural default in failing to raise the claim in his initial state habeas proceeding because Reynoso is the cause of the alleged default. This is error: The Court blames Reynoso for "waffling" about whether he wanted to pursue state habeas remedies, describes him as "mercurial" and states that Reynoso's "dithering" interfered with state habeas counsel's performance, and that because of this, state habeas counsel was not ineffective. To the contrary, the actions by Reynoso were manifestations of his mental

illness and related facts that obligated his state habeas attorneys to investigate for the cause of his behavior and to search for the evidence mitigating against the death penalty.

The Court failed to examine the reason for Reynoso's "waffling," and how counsel's total neglect of Reynoso fed into the confounding consequences and effects of his mental illness. State habeas counsel largely ignored Mr. Reynoso. Effective habeas counsel would have met with Reynoso soon after his appointment and would have continued to meet with him to develop a relationship of trust. Federal habeas counsel, as shown in the record, easily established a proper attorney-client relationship based on confidence and trust in counsel's readiness to advocate for Mr. Reynoso. Previously, he was, in essence, unrepresented, so far as it must have appeared to him. State habeas counsel failed in his first and most essential obligation:

> Without exception, habeas corpus counsel has a duty to meet the capital client face-to-face as soon as possible after appointment. Counsel, or some member of the defense team, should make every effort to establish a relationship of trust with the client.

State Bar of Texas, *Guidelines and Standards for Texas Capital Counsel*, 69 Tex. Bar J. 966, 977 (2006).

Mr. Reynoso's state habeas counsel never met with him. Well into the state habeas process, on a single occasion, state habeas counsel sent a different lawyer to meet with Mr. Reynoso. That surprise meeting was perfunctory and clearly was not aimed at developing an attorney-client relationship between Mr. Reynoso and/or his family or friends, and his appointed lawyer grounded in trust and confidence that counsel was serving as Mr. Reynoso's advocate. Likewise, Mr. Reynoso's family was largely ignored by his defense teams.

> It is also essential for counsel or some member of the defense team to develop a relationship of trust with the client's family or others on whom the client relies for support and advice.

*Id*. State habeas counsel had no contact with any member of Mr. Reynoso's family or any of his

3

friends with respect to his life history or his ambivalence about pursuing state habeas remedies. Therefore, it was impossible for State habeas counsel to demonstrate that a mental illness was the immediate cause for Mr. Reynoso's symptomatic appearance of "dithering." (Mem. Op. 6).

State habeas counsel had a duty to investigate why Mr. Reynoso said that he wanted to waive habeas remedies and ask to be executed. The State Bar Guidelines address this matter directly:

> It is a dereliction of habeas corpus counsel's duty to simply acquiesce to a capital client's insistence that he or she wishes to be executed, or wants to challenge only the conviction but not the sentence. Counsel must try to identify the source of the client's feelings about these matters. Counsel should consult lawyers, clergy, mental health professionals, the client's family or others who have worked with similarly situated death row inmates.

*Id*. Each and every one of these Guidelines was violated. In trying "to identify the source of" Mr. Reynoso's ambivalence about pursuing habeas remedies, effective counsel could, should and would have developed a relationship with Mr. Reynoso and his family. Through those relationships, state habeas counsel would have learned enough about Mr. Reynoso's life history to detect that Reynoso had mental illness underlying his appearance of ambivalence, which is now unfortunately described as "waffling," "belligerent" and "mercurial." (Mem. Op. 7). A psychiatrist, psychologist or other expert should have examined Mr. Reynoso, with appropriate testing. Counsel then would have been in a position to help Mr. Reynoso establish that his lawyer, at his trial abandoned him, by failing to develop the readily available evidence mitigating in favor of a sentence of life imprisonment. Indeed, the only potential defense experts in state habeas were the two psychologists appointed by the Court for the limited purpose of determining his competence to waive his appeals.

As Dr. Richard Dudley explained in an affidavit before the Court,

In light of Mr. Reynoso's trauma exposure and chronic clinical depression,

4

>another factor bearing upon Mr. Reynoso's vacillation about legal remedies comes into focus. Because of these psychiatric concerns, Mr. Reynoso needed a relationship with his legal team that he apparently never had until the last stage of his state habeas corpus representation and his federal habeas corpus representation. He needed someone on his legal team to take the time to elicit his life story from him, to listen to him, and to help him make sense of his life and what has become of him. It appears that he did not have this kind of assistance before and during trial and after trial, until his state habeas corpus proceeding was nearly over. When he finally did obtain this kind of assistance, Mr. Reynoso stabilized, at least to the extent of maintaining the pursuit of his legal remedies. That is the very kind of assistance someone with Mr. Reynoso's history of exposure to trauma and history of clinical depression needed to help him sort out the feelings he had about pursuing his legal remedies or being executed.

Amended Petition, Exhibit 17, at ¶ 15(f).

Mr. Reynoso is stabilized, and for several years, has pursued remedies despite his former attorneys' neglect in his state trial and habeas.

State habeas counsel did nothing that the State Bar standards prescribed. He never met his client. He avoided developing a relationship with his client's family. He grew increasingly irritated that they kept calling him. *See* Docket Item 44, Exhibit B, at 6, ¶29. He did nothing when he learned that his client wanted to waive habeas proceedings and be executed. He avoided contact with his client. He took no part in the two hearings devoted to his client's efforts to drop his habeas proceedings. He had no contact with the mental health experts appointed by the trial court to examine his client's competence to waive habeas proceedings. State habeas counsel did none of these things through each of which was required by the applicable professional standards.

The results of state habeas counsel's deficient performance were devastating. He acquiesced to Mr. Reynoso's episodic desire to waive habeas remedies, and did nothing to establish the root cause of Mr. Reynoso's on-off-on letters and related statements about relief from his death sentence. He did not investigate Mr. Reynoso's life history. Therefore, he was in

no position to know that the mitigating evidence that trial counsel presented was superficial and misleading and of a kind and to a degree that constituted ineffective assistance of counsel.

State habeas counsel did not even talk with the trial defense team about their mitigation investigation. Had he done so he would have learned that it was done hastily, on the eve of trial, and woefully incomplete. State habeas counsel's deficient performance – *not Mr. Reynoso's ambivalence about pursuing state habeas remedies* – was the reason he failed to raise a persuasive claim of ineffective assistance by trial counsel in investigating and presenting mitigating evidence.

The Court implies that the quantity and quality of mitigation evidence presented at trial excuses any need for habeas counsel to investigate trial counsel's ineffectiveness with respect to investigating and presenting mitigation evidence. That observation is flat wrong. It is explained by restating the evidence that was presented, and does not address the evidence that was NOT presented. The presentation of mitigating evidence here, on its face, demonstrated a lack of preparation. The haphazard and incomplete examination of witnesses and the failure of counsel to explain to the jury how the disparate facts about Mr. Reynoso's life actually mitigated his moral culpability – the central mission of mitigation - – raised a substantial question about the defense team's preparation for a punishment hearing. This kind of presentation is a "red flag" for inadequate investigation. *See Penry v. Lynaugh*, 492 U.S. 302, 328 (1989) ("full consideration of evidence that mitigates against the death penalty is essential if the jury is to give a reasoned moral response to the defendant's background, character, and crime").

The court's Opinion, respectfully, is flawed for blaming a mentally ill death row convict for his lawyer's lack of interest in his case.

**2. The showing of prejudice under *Martinez* rests on Petitioner's showing that the underlying claim of trial counsel ineffectiveness is meritorious.**

The Court also held that Reynoso failed to show prejudice under *Martinez, supra,* because he failed to show a reasonable probability that a properly developed ineffectiveness claim would have been successful in the State trial. This conclusion reflects the Court's erroneous analysis of both the trial and habeas attorneys' deficient performance, and the resulting prejudice that establish that Petitioner was harmed by the ineffective assistance of trial counsel.

Multiple pleadings filed on behalf of Mr. Reynoso in this Court repeatedly present the Supreme Court's decisions and standards for examining the performance of lawyers appointed as trial counsel in capital cases. The standards make it clear that investigation into mitigating evidence "… should comprise efforts to discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.' ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 1.4.1(C), p. 93 (1989) (emphasis added)." *Wiggins v. Smith*, 539 U.S. 510, 524-525 (2003) (emphasis in original). The undisputed facts show that trial counsel failed to satisfy the standards that the Supreme Court requires.

The mitigation investigation was conducted in haste – and conducted entirely – by a "mitigation specialist" who explained in her affidavit to this Court that trial counsel

> employed me after the Court approved funds for a mitigation specialist. It was my impression that jury selection was to begin in less than a month. My work was severely hampered by insufficient time to conduct a proper mitigation investigate [sic] or properly develop evidence that became known to me.

In the Amended Petition, Exhibit 1, at 1, she conceded her deficient performance further by explaining how her investigation fell short because of the inexcusable failures of trial counsel:

> There was no time, and no direction, instruction or opportunity, to engage in a

7

>proper investigation of matters raised by the initial family interviews that were potentially relevant to the mitigation special issue, such as: the reasons for and the extent of Mr. Reynoso's drug abuse, the mental health implications of his mother's abandonment combined with the lack of parenting by his father and physical and verbal abuse at home, the implications of his depression and suicide attempts, his gang involvement and exposure to excessive trauma and violence.

*Id*. at 3. And she concluded,

>In my judgment, based on my training and experience, I did not conduct the kind of investigation for mitigating evidence appropriate to a death penalty case, for reasons of lack of time, lack of resources, and lack of interest by the attorneys for Mr. Reynoso.

Notably, she does not assign blame to any lack of interest or cooperation by Mr. Reynoso.

The Court again, with respect to trial counsel's ineffectiveness, unfairly blamed Mr. Reynoso for counsel's failure to investigate. When excusing counsel's dereliction in investigation, the Opinion states that "[c]ounsel are not normally required to discover witnesses that the defendant has withheld, especially when, as here, they are duplicative" Opinion, at 9. The statement is incorrect and confusing. It is not a defendant's responsibility to find his mitigation witnesses. The Court's observation also has no basis in the record. Mr. Reynoso did not withhold any witnesses from counsel, nor has anyone suggested that he did. The statement is a "manifest error" of fact, for the reason that it is nowhere supported in any of the papers. Indeed, the Opinion's statement emphasizes that trial counsel apparently relied only on this mentally ill, jailed, capital murder defendant, and the "expert" hired shortly before trial, for mitigating evidence. The defense team's investigation was, as the mitigation specialist said, below standard solely because of "lack of time, lack of resources, and lack of interest by the attorneys for Mr. Reynoso."

The Amended Petition, at 33-57, presented the mitigating evidence that a thorough and

constitutionally adequate investigation would have produced, not just witnesses Mr. Reynoso now is imagined to have "withheld." The Petition includes some of the contextual facts counsel presented in the punishment hearing at trial. It also corrects the false and misleading information that counsel presented to the jury. The defense essentially suggested that a veneer of normalcy and well-being as the story throughout Mr. Reynoso's pre-teen life until his mother abandoned the family. The Petition also includes exponentially more facts and probative information than trial counsel knew or should have known – describing Mr. Reynoso's lifetime exposure to violence and life-threatening attacks, his profound childhood isolation and repeated victimization, the lack of childhood nurturing and protection, and his many manifestations of severe and growing mental illness.

The Court's statement that "[m]uch of the habeas evidence came before the jury, though perhaps not in the detail Reynoso now wishes," (Opinion, at 8) is just flat wrong. The difference between the evidence trial counsel presented and what a reasonable investigation would have discovered is like night and day. As demonstrated in Petitioner's Reply and Response to Respondent's Answer and Motion for Summary Judgment, Docket Item 36, at 28, what counsel did was as if they presented a few letters of the alphabet in place of available and compelling evidence. The few figurative "letters of the alphabet" that defense counsel presented did not begin to tell the story of Reynoso's life and its relation to the killing of Tonya Riedel. The defense team gave "lip-service" to mitigation of the death penalty but failed to develop readily available evidence and prove the case. The Opinion is flawed by allowing form - calling some witnesses – to trump substance, namely, telling the true story of Reynoso's life.

The Petition summarized the story that trial counsel could have told and demonstrates the prejudice associated with the trial attorneys' performance that was manifestly deficient in both

9

kind (quality) and degree (quantity). This Court states that "[t]he new evidence differs little in substance or mitigating thrust from that his trial attorneys put before the jury," Opinion, at 9. This reflects a failure to appreciate what happened at trial in comparison to what could have happened had trial counsel conducted a constitutionally reasonable investigation and mitigation evidence.

As set forth in the Amended Petition, and as Respondent confirmed in her bullet points of mitigation set forth in the Motion for Summary Judgment, Docket Item 25, at 40-42, the story that the jury was actually presented in the defense penalty phase trial evidence was this: Reynoso was raised in a middle-class home where everyone was happy and everything was okay until his mother abruptly left when he was 13 years old. After she left, Reynoso missed her terribly, and his schoolwork suffered, so he started using drugs. Except when he was on drugs, he was a loving, caring person. Some defense witnesses also alluded to Reynoso's association with gang members, but no evidence connected those experiences with the rest of his life. The bottom line in the defense story was that Reynoso missed his mother, he turned to drugs in the wake of her abandonment, and he would not have done all of these terrible things had she not abandoned him.

This story was not true. It was also superficial, incomplete, and misleading. It was invented by the defense, which only began to develop "mitigation evidence" by hiring the "mitigation expert" a month before trial.

The facts are that John Reynoso did not come from a middle class home. He grew up in poverty and in neighborhoods where violence was commonplace. The violence that shaped his neighborhood also shaped life within his home. His parents fought constantly. Day-in and day-out, his older brother took out his anger, fear, and frustration on John, beating him up,

10

tormenting him, and threatening him to the point where his parents were afraid to leave him home alone with John. His mother was his only protector. When his mother could no longer stand the abuse suffered by the hands of her husband, she had to leave, and she left. Her leaving meant that John no longer had a parent's protection. John's father apparently was unable to recognize what John needed and would have been incapable of providing any comfort even if he had recognized it, according to the proffered evidence. The family violence continued. Mr. Reynoso was compelled by real and overwhelming emotional fear and the need for physical protection. John attempted to find refuge in organized criminal gangs of older boys, a route made available by his older sister's boyfriend, who was a gang member. That poignant effort to find protection, comfort, perhaps, however, turned into a years-long nightmare in which he witnessed brutal violence, inter-and-intra-gang warfare, and became another target for the violence and threats of violence that encompassed John's whole family. To try to cope with the extraordinary danger, solitude and pain in his early adolescence, John turned to drugs and became addicted. The combination of drugs and ongoing exposure to trauma produced brain injuries as well as mental illness. The need for money for more drugs turned into an obsession that, when frustrated by simple things, such as Tonya Riedel having no money, led to Mr. Reynoso's thoughtless reaction and a violent explosion.

      This is the story that counsel's deficient performance failed to find and tell, and this is the story that probably would "have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture...." *Strickland v. Washington*, 466 U.S. 668, 695-96 (1984). The fact that trial counsel were able to present sound bites on a few topics that momentarily existed within the full mitigating story that could have been drawn of Mr. Reynoso's life, is what this Court found adequate, Opinion, at 8, 9. With all due respect for the

Court, "sound bites" and "lip-service" do *not* meet the requirements of *Strickland* and its progeny when the defense team does not seek to obtain experts, and prepare family members and others as mitigation witnesses. As the Supreme Court explained,

> We certainly have never held that counsel's effort to present some mitigation evidence should foreclose an inquiry into whether a facially deficient mitigation investigation might have prejudiced the defendant. To the contrary, we have consistently explained that the *Strickland* inquiry requires precisely the type of probing and fact-specific analysis that [this] court failed to undertake....

*Sears v. Upton*, 561 U.S. 945, 955 (2010) (footnote omitted). Thus, this is a proper case for correcting errors under Rule 59(e).

About the Martinez "prejudice" prong: When the "probing and fact-specific analysis" that *Strickland* requires is undertaken, counsel's deficient performance in Mr. Reynoso's case proves to be plainly prejudicial. Both the murder and the "unremitting and escalating" violence, Opinion, at 10, engaged in by Mr. Reynoso in the short period of days before and after the murder stemmed from the same underlying conditions. What was escalating was his inability to cope with the rigors and profound suffering in his life because of trauma-related mental illness and brain dysfunction. It spilled into violence, but it arose out of anguish and mental illness, not a malign character. The un-investigated mitigating evidence is plainly not "'in the main cumulative' to that from trial." Opinion, at 9 (quoting *Carty v. Thaler*, 583 F.3d 244, 264 (5th Cir. 2009)). The Court made a mistake in finding that it did.

## CONCLUSION

Throughout the course of this litigation, counsel for Mr. Reynoso has urged the Court to hold an evidentiary hearing, at first only on the merits of the claims, Docket Item 20, at 71, and Docket Item 43, at 39, and then on both the merits of the claims and the issue of cause under *Martinez v. Ryan*, Docket Item 57, at 30, and Docket Item 64, at 13. Mr. Reynoso respectfully

submits that an evidentiary hearing would help the Court understand and appreciate the ineffectiveness of state habeas counsel and both the deficient performance and the prejudice associated with the deficient performance of trial counsel. Without hearing evidence, a court is limited to only words on paper and has no opportunity fully to connect with truth.

The *Andrus* opinion from the Supreme Court on June 15 makes this point in a compelling fashion: "During an 8-day evidentiary hearing, Andrus presented what the Texas trial court characterized as a 'tidal wave of information ... with regard to mitigation.'" 2020 WL 3146872 at *3. The "[trial] court found the abundant mitigating evidence so compelling, and so readily available, that counsel's failure to investigate it was constitutionally deficient performance that prejudiced Andrus during the punishment phase of his trial." *Id*. at *1. We re-urge the Court to withdraw its Opinion and Judgment, hear and see the evidence and make corrected findings.

FOR THESE REASONS, John Reynoso asks the Court to alter or amend the judgment entered herein.

        Respectfully submitted,

        /S/ Edward Mallett
        Edward Mallett
        SBN: 12863000
        Federal ID No. 442
        4306 Yoakum Blvd, Suite 400
        Houston, Texas 77006
        Tel: (713) 236-1900
        Fax: (713) 228-0321
        edward@msblawyers.com

        Richard H. Burr
        SBN: 24001005
        Burr and Welch, PC
        PO Box 525
        Leggett, Texas 77350
        Tel: (713) 628-3391
        Fax: (713) 893-2500
        Dick.burrandwelch@gmail.com

        Attorneys for Petitioner, Juan Reynoso

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 17th day of June 2020, I electronically filed the foregoing Motion to Alter or Amend the Judgment with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for Respondent:

Garrett Mitchell Greene
Assistant Attorney General
garrett.greene@oag.texas.gov

        /S/ Edward Mallett

        Edward Mallett
        Counsel for Petitioner